UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SUZETTE GLASS,<br><br>        Plaintiff,<br><br>v.<br><br>RESPECTED ROOTS, LLC,<br><br>        Defendant. | **Civil Action File No.**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Suzette Glass ("Ms. Glass") states her complaint against the above-named Defendant as follows:

### INTRODUCTION

1. This is a complaint for sexual harassment and discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and Georgia's Equal Pay Act (GA Code Sec. 34-5-1).

### JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under the laws of the United States and supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's state law claims.

3.  Venue is proper in this district and division because Defendant resides herein and the events giving rise to this matter occurred herein. 28 U.S.C. § 1391 (b)(1).

4.  Plaintiff brought a Charge of Discrimination with the Equal Employment Opportunity Commission office in Atlanta, Georgia (EEOC Charge No. 41-2022-07797) and received a Notice of Right to Sue on or about October 18, 2022.

## PARTIES

5.  Ms. Glass is a citizen of the State of North Carolina. She submits to the jurisdiction of this Court.

6.  Defendant Respected Roots, LLC ("Defendant" or "Respected Roots") is a Georgia limited liability company. Defendant may be served with the summons and complaint by personal service on its Registered Agent, Jaret Patterson, whose office is located at 3427 Oakcliff Road, Suite 114, Doraville, GA 30340. This Court has personal jurisdiction over Defendant.

## FACTUAL ALLEGATIONS

7.  Ms. Glass was approached by Jason Hawkins in December 2021 to work at Respected Roots as a Sales Operations Manager.

8.  Upon information and belief, Mr. Hawkins was at all relevant times an

owner, member, manager, and/or principal of Respected Roots.

9. Although Ms. Glass lived in North Carolina with her family, Mr. Hawkins requested she come work for Respected Roots in Atlanta, Georgia, because he was impressed by her past success and business connections.

10. After two Zoom interviews, Mr. Hawkins invited Ms. Glass and her entire family to Atlanta to view the company's facilities and finalize her employment terms in January 2022.

11. During this time, Mr. Hawkins took Ms. Glass and her family out to dinner, during which Ms. Glass' children noted that Mr. Hawkins was being overly friendly with Ms. Glass. Ms. Glass thought Mr. Hawkins was just excited about the prospect of her assisting in expanding his company.

12. Mr. Hawkins also promised Ms. Glass a significant compensation package, including reimbursing her for relocating her entire family to Georgia and working for him and Respected Roots.

13. In reliance on these promises, Ms. Glass began working for Respected Roots in Atlanta on or around January 31, 2022.

14. Respected Roots provided Ms. Glass with an assistant and she immediately began preparing to expand the company.

15. Ms. Glass hired additional staff and managers and was set to open retail

locations in Birmingham and Chicago over the coming weeks.

16. In the meantime, Ms. Glass began noticing issues with the way Mr. Hawkins ran Respected Roots.

17. For example, Ms. Glass noticed that employees were not being paid overtime that they were due and other employees were working seven days per week from open to close.

18. Mr. Hawkins also expressly told Ms. Glass that he only wanted her to hire heterosexual African American employees because he did not want other faces "representing his brand," particularly white and LGBTQ+ employees.

19. Ms. Glass objected and told Mr. Hawkins that this was against the law, but Mr. Hawkins persisted, even after Ms. Glass sent him the relevant labor and antidiscrimination laws.

20. Mr. Hawkins also became inappropriately touchy with Ms. Glass.

21. For example, Mr. Hawkins would hug her, rub her back, arms, and hands, sniff her neck, and make uncomfortable comments to her about how beautiful she is.

22. At one event, Mr. Hawkins approached Ms. Glass from behind, wrapped his arms around and across her chest and breasts, and said "gimme some of that sugar."

23. Ms. Glass, who recorded the incident on her phone, was horrified, rejected his advance, and pulled away from him.

24. Another day shortly thereafter, Ms. Glass was walking down the street with Mr. Hawkins when he tried to grab her hand and arm several times and stated things like, "let me help you, queen."

25. Ms. Glass pulled away and stated, "I'm fine, thank you."

26. Immediately following this rejection, Mr. Hawkins' entire demeanor towards Ms. Glass changed.

27. He would no longer return her calls or emails and became distant towards her, routing all of his communications through her assistant instead, and significantly hindering her ability to do the job for which she was hired.

28. In February 2022, shortly after the above incident, Ms. Glass set up an important meeting between Mr. Hawkins and a business connection of hers about a potential and very lucrative government contract for Respected Roots.

29. In a separate video call immediately following this successful meeting, Ms. Glass asked Mr. Hawkins about the moving expenses, bonuses, and other compensation that he promised her.

30. Mr. Hawkins immediately became enraged, stating that it was unprofessional

of her to even ask about the compensation she was promised, and terminated her over the video call in front of the assistant, Quentin Robinson, and Respected Roots' co-owner Jaret Patterson.

31. To this day, Ms. Glass never received her final paycheck, any compensation for moving expenses, or any quarterly bonus compensation due to her for keeping staff retention above 85% at Respected Roots' retail locations. Ms. Glass had been renting a room in Atlanta for three weeks at this point.

32. As a result of Mr. Hawkins' and Respected Roots' conduct, Ms. Glass has suffered severe emotional and psychological harm in addition to devastating monetary damages in the form of unpaid wages and other compensation.

33. Upon information and belief, Ms. Glass was terminated in retaliation for rejecting Mr. Hawkins' advances, as Ms. Glass excelled in her job performance at all relevant times.

## SUBSTANTIVE CLAIMS

### I. Title VII Sexual Harassment – Hostile Work Environment

34. By this reference, Plaintiff incorporates the previous paragraphs as if fully set forth herein.

35. On a consistent basis during Ms. Glass's employment, Mr. Hawkins subjected her to sexual harassment.

36. Ms. Glass was forced to work in a hostile atmosphere with uninvited and unwelcome sex-based comments and other sexually charged conduct.

37. The sexual harassment to which Ms. Glass was subjected was sufficiently severe and pervasive to alter the terms and conditions of her employment and create an abusive working environment.

38. Title VII requires employers to prevent and correct any harassing behavior in the workplace.

39. Mr. Hawkins was, upon information and belief, at all relevant times a 50% owner, member, manager, and/or principal of Defendant.

40. Because of its failure to take prompt and remedial action, and its deliberate indifference to sexually hostile conduct, Defendant intentionally engaged in impermissible employment practices in violation of Title VII, resulting in the denial of equal employment opportunities on the basis of sex.

41. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

42. Defendant's violation of Title VII was willful, knowing, malicious, or

carried out in reckless disregard for its lawfulness.

## II.     Title VII Sexual Harassment – Quid Pro Quo

43. By this reference, Plaintiff incorporates the previous paragraphs as if fully set forth herein.

44. On a consistent basis during Ms. Glass's employment, Mr. Hawkins subjected her to sexual harassment.

45. Plaintiff deserved to retain her employment with Defendant and did not do anything to merit discharge or discipline. Nevertheless, Defendant denied Plaintiff the benefits of employment, including all favorable conditions and emoluments thereof and subjected Plaintiff to unwelcome sexual conduct the reaction to which was used as a basis for decisions, either actual or threatened, affecting compensation, terms, conditions or privileges of employment.

46. Defendant linked tangible job benefits to the acceptance or rejection of Mr. Hawkins' sexual advances, sex-based comments, and other sexually charged conduct.

47. Title VII requires employers to prevent and correct any harassing behavior in the workplace.

48. Mr. Hawkins was, upon information and belief, at all relevant times a 50%

owner, member, manager, and/or principal of Defendant.

49. Because of its failure to take prompt and remedial action, and its deliberate indifference to sexual quid pro quo harassment, Defendant intentionally engaged in impermissible employment practices in violation of Title VII, resulting in the denial of equal employment opportunities on the basis of sex.

50. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

51. Defendant's violation of Title VII was willful, knowing, malicious, or carried out in reckless disregard for its lawfulness.

### III.  Title VII – Retaliation

52. By this reference, Plaintiff incorporates the previous paragraphs as if fully set forth herein.

53. On a consistent basis during Ms. Glass's employment, Mr. Hawkins, and therefore Defendant, subjected her to sexual harassment.

54. In retaliation for rejecting Mr. Hawkins' sexual advances, Ms. Glass was terminated from Respected Roots without any non-discriminatory basis

therefore.

55. By terminating Plaintiff for engaging in a statutorily protected activity and objecting to and refusing to engage in Mr. Hawkins' sexual advances, Defendant intentionally engaged in impermissible employment practices in violation of Title VII, resulting in the denial of equal employment opportunities on the basis of sex.

56. Plaintiff's termination was a materially adverse employment action taken by Defendant and Mr. Hawkins.

57. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

58. Defendant's violation of Title VII was willful, knowing, malicious, or carried out in reckless disregard for its lawfulness.

### IV.   Georgia's Equal Pay Act

59. By this reference, Plaintiff incorporates the previous paragraphs as if fully set forth herein.

60. Georgia's Equal Pay Act requires employers to pay employees of the

opposite sex equal wages for equal work. *See* GA Code Sec. 34-5-1.

61. On a consistent basis during Ms. Glass's employment, Mr. Hawkins, and therefore Defendant, subjected her to sex discrimination.

62. Because of this unlawful discrimination and Defendant's unlawful retaliation against Ms. Glass for opposing and objecting to said discrimination, Ms. Glass was terminated, causing her to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

63. To this day, Ms. Glass never received her final paycheck, any compensation for moving expenses, or any quarterly bonus compensation due and promised to her for keeping staff retention above 85% at Respected Roots' retail locations. Ms. Glass had been renting a room in Atlanta for three weeks at the time she was terminated but never received compensation for these expenses as promised by Mr. Hawkins, either.

Based on the above, Ms. Glass demands a jury trial on all triable issues and asks the Court for the following relief: back pay, front pay, compensatory damages in an amount determined by the jury, punitive damages in an amount determined by the jury, attorneys' fees and costs, and other relief deemed appropriate by the

Court.

Respectfully submitted on December 8, 2022.

/s/ *James Radford*
James Radford
**RADFORD & KEEBAUGH, LLC**
315 W. Ponce de Leon Ave., Suite 1080
Decatur, Georgia 30030
(678) 271-0302
james@decaturlegal.com

/s/ *Reyna Lubin*
Reyna Lubin (seeking pro hac admission)
**EISENBERG & BAUM, LLP**
24 Union Square East, PH
New York, NY 10003
Tel: (212) 353-8700
Fax: (917) 591-2875
rlubin@eandblaw.com

*Attorneys for Plaintiff Suzette Glass*